UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:14CV-00041-JHM

M.P.T.C. by his Next Friends
his parents, C.C. and T.C.                                                                    PLAINTIFF

V.

NELSON COUNTY SCHOOL DISTRICT, ET AL.                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants, Nelson County School District, Board of Education of Nelson County, Anthony Orr, Shelly Hendricks, Jennifer Miller, and Tessa Jaggers, for summary judgment [DN 32] and a motion by Plaintiff, M.P.T.C., for leave to file Plaintiff's second amended complaint [DN 37]. Fully briefed, these matters are ripe for decision.

### I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some

"metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## II. BACKGROUND

Plaintiff is currently a senior at Nelson County High School. Plaintiff has attended schools within the Nelson County School District from age five to the present. In 2007, Plaintiff was identified as a child with a disability eligible to receive special educational services. Plaintiff continues to be identified as an individual with a qualifying disability under the Individuals with Disabilities Education Act, including a mild mental disability which manifests in some learning issues and social adaptive issues. (T.C. Dep. at 12.)

In August of 2008, Plaintiff's parents filed a "due process request" on behalf of their son. (T.C. Dep. at 9-11.) Issues concerning Plaintiff's elementary school educational experience, including allegations of bullying by peers, were raised through an administrative hearing request under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et. seq.* These issues were resolved by a settlement agreement executed on June 16, 2009. Based on further "harassment, bullying, teasing, and hazing" that occurred after the settlement agreement, Plaintiff filed this action in the Nelson Circuit Court on December 23, 2013, asserting claims against Defendants for deprivation of Plaintiff's constitutional rights under 42 U.S.C. § 1983,

violation of § 504 of the Rehabilitation Act, violation of KRS § 344 *et. seq.*, and negligence. (Amended Complaint at ¶ 15.) Defendants removed this action to this Court on January 17, 2014. The Court granted Defendants' motion for a more definite statement. In response, Plaintiff filed an amended complaint on July 8, 2014.

In his amended complaint, Plaintiff alleges that from August of 2009 to June of 2014 he "has been continually, systematically and intentionally assaulted, abused, harassed, menaced, taunted, threatened, teased and bullied." (Amended Complaint ¶ 14.) Plaintiff alleges that he sustained verbal and physical abuse by other students. Plaintiff maintains that throughout this time period, he and his family repeatedly complained to school officials that other students were bullying him. Specifically, Plaintiff alleges that he was bullied during both the 2012-2013 and 2013-2014 school year at Nelson County High School ("NCHS"). (Id. at ¶¶ 17-23.) Additionally, Plaintiff asserts that he was subjected to harassment on the bus, stabbed in the knee with a pencil, beaten up in the bathroom, and had a basketball thrown at his face "while [he] was enrolled at Old Kentucky Home Middle School" during the academic years of 2009-2012. (Id. at ¶¶ 24-25).

The Nelson County School System is operated by the Nelson County Board of Education ("Board of Education"). Defendant Anthony Orr ("Orr") has been the Superintendent of the Nelson County Public Schools since August of 2010. Defendant Jennifer Miller ("Miller") was the principal of Old Kentucky Home Middle School (OKHMS) during the 2011-2012 school year which was the Plaintiff's eighth grade year. Defendant Shelly Hendricks ("Hendricks") has been the principal of NCHS from August 2013 to the present. Defendant Tessa Jaggers ("Jaggers") became assistant principal at NCHS at the beginning of the 2013-2014 school year. (Anthony Orr Aff. at ¶¶ 3-6.) Plaintiff's case revolves around these school officials' alleged

3

failure to recognize and reasonably respond to a pattern of bullying incidents he suffered while attending OKHMS and NCHS.

Neither Plaintiff's amended complaint nor his response to Defendants' motion for summary judgment sets forth a clear recitation of the bullying incidents, which school official or administrator the Plaintiff or his parents informed, or the response by the administrative official. In his response, Plaintiff identifies the following instances of verbal and physical abuse and bullying:

- In elementary school, students placed gum in the hood of his jacket, resulting in gum stuck in his hair. To remove the gum, someone at the school used a cleaning compound resulting in third degree burns to the Plaintiff's head.
- In elementary school, Plaintiff was stabbed with a pencil.
- In elementary school, physical assaults and verbal harassment continued at school and on the bus.
- After the "due process request" that resulted in a settlement agreement, physical assault and verbal harassment occurred on the bus. The Plaintiff reported it to the bus driver, but no action was taken.
- The Plaintiff was also struck in the face by another student with a basketball that broke his glasses and required medical attention.
- The Plaintiff was struck by a cable across his leg on the way to class by another student which left a large welt on his leg.
- The Plaintiff was continuously verbally harassed by other students with comments like "you f__k your mother," "you are gay," and "you f__k your dog."
- Plaintiff was physically assaulted by other students once in the bathroom.
- During his senior year, Plaintiff was physically assaulted in the parking lot of the school.

(Response to Summary Judgment Motion at 2-3.)

As a result of this conduct, Plaintiff states that his parents constantly contacted the school administrators listed as Individual Defendants and the Assistant Principal Mr. Steve Webb and requested that they address the bullying of their son. Additionally, Plaintiff represents that his father made numerous calls to the Board office requesting assistance from Defendant Orr. Despite these reports, Plaintiff contends there were no known efforts to protect the Plaintiff. (Id. at 3.)

Defendants filed this current motion for summary judgment on Plaintiff's claims. After the briefing was complete, Plaintiff filed a motion for leave to file a second amended complaint to allege further instances of harassment and bullying inflicted upon Plaintiff in the 2015-2016 school year. Further, Plaintiff moves to amend his complaint in order to prosecute the matter in his own name due to the fact that he has reached the age of majority.

### III.  DISCUSSION

#### A.  Failure to Exhaust Administrative Remedies

Defendants maintain that Plaintiff's federal claims are barred by his failure to exhaust administrative remedies under the Individual with Disabilities Education Act. Generally, "plaintiffs must exhaust IDEA procedures if they seek 'relief that is also available' under IDEA, even if they do not include IDEA claims in their complaint." Zdrowski v. Rieck, 119 F. Supp. 3d 643, 662 (E.D. Mich. 2015)(internal citation omitted). In other words, "'when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required.'" Id. at 663 (quoting S.E. v. Grant County Bd. of Educ., 544 F.3d 633, 642 (6th Cir. 2008)).

The Court is not persuaded that Plaintiff's alleged injuries under the § 1983 claims relate to the provision the IDEA. Plaintiff alleges that he was subjected to verbal and physical harassment and abuse by his peers and that the administration failed to respond appropriately. "These injuries are non-educational in nature and cannot be remedied through the administrative process." F.H. ex rel. Hall v. Memphis City School, 764 F.3d 638, 644 (6th Cir. 2014)(exhaustion requirement inapplicable where child was allegedly verbally, physically, and sexually abused because "requiring exhaustion of Appellants' 42 U.S.C. § 1983 claims would create an additional administrative barrier not present for non-disabled children"); Tristan v.

Socorro Independent School Dist., 902 F. Supp. 2d 870, 879–80 (W.D. Tex. 2012) ("[I]t would be absurd to interpret the [IDEA] as placing restrictions on a disabled student seeking redress for constitutional torts, when such restrictions would not apply if the same claims were brought by his non-disabled classmates."); Sagan v. Sumner County Bd. of Educ., 726 F. Supp. 2d 868, 882–83 (M.D. Tenn. 2010) ("The Court construes these claims as arising from non-educational injuries, irrespective of the fact that they occurred in an educational setting and were allegedly perpetrated by educators against a student. If Jane Doe were not a disabled student, there would be no administrative barrier to her pursuit of these claims."). Therefore, Plaintiff is not required to exhaust his § 1983 claims related to non-educational injuries.

## B. § 1983 Equal Protection Claim

In examining the amended complaint, it appears that the Plaintiff asserts a § 1983 Equal Protection Claim. Plaintiff argues that the Defendants discriminated against him based on his disability by treating his allegations of bullying, hazing, and harassment with deliberate indifference. "The Sixth Circuit recognizes two methods of proving an equal protection violation based on a school official's response to peer harassment: (1) disparate treatment of one class of students who complain about bullying as compared to other classes of students, see Soper v. Hoben, 195 F.3d 845, 852 (6th Cir. 1999), and (2) deliberate indifference to discriminatory peer harassment, see Shively v. Green Local Sch. Dist. Bd. of Educ., 579 Fed. Appx. 348, 356–57 (6th Cir. 2014)." Stiles ex rel. D.S. v. Grainger Cty., Tenn., 2016 WL 1169099, *11 (6th Cir. Mar. 25, 2016).

### 1. Disparate Treatment

Under the disparate treatment theory, a plaintiff claiming disability discrimination must introduce evidence that his complaints of peer harassment were treated differently by school

6

officials than non-disabled students' similar complaints. Stiles, 2016 WL 1169099, *12 (citing Soper, 195 F.3d at 852). Plaintiff offered no evidence of how Defendants treated other students—disabled or non-disabled—who similarly complained about or suffered from bullying. Therefore, Plaintiff's equal protection claim cannot survive summary judgment based on a disparate treatment theory.

**2. Deliberate Indifference**

To demonstrate a violation of the Fourteenth Amendment's Equal Protection Clause based on deliberate indifference, the Sixth Circuit has also allowed plaintiffs raising equal protection claims to demonstrate defendants' disability-based discriminatory intent by showing that defendants were "deliberately indifferent to the allegations of student-on-student [disability] harassment." Williams v. Port Huron School Dist., 455 Fed. Appx. 612, 618 (6th Cir. 2012) (citing Gant ex rel. Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 139-40 (2d Cir. 1999)). The Court will evaluate Plaintiff's equal protection claims under the following three elements:

> (1) the [disability] harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school; (2) the funding recipient had actual knowledge of the [disability] harassment; and (3) the funding recipient was deliberately indifferent to the harassment.

Peterson v. Kramer, 2016 WL 680828, *10 (S.D. Ohio Feb. 18, 2016)(racial harassment) (quoting Vance v. Spencer County Pub. Schools Dist., 231 F.3d 253, 258-259 (6th Cir. 2000) (sexual harassment)). Plaintiffs may prove deliberate indifference "only where the [party's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Vance, 231 F.3d at 260.

Even if Plaintiff could proof that he was bullied and harassed as a result of his disability, the record fails to show that the school administrators acted with deliberate indifference to

Plaintiff's complaints of harassment. In fact, Plaintiff fails to offer evidence of a bullying incident that was reported to school officials where the incident was not investigated, the administrator did not respond to the complaint, or the student harasser was not reprimanded or disciplined. Additionally, Plaintiff fails to point to any evidence that suggests that any of the alleged deficient responses by the individual defendants resulted in further misconduct by the peer toward the Plaintiff. Absent Plaintiff's general allegations that the parents communicated *all* of the alleged conduct to *all* school officials, the actual responses of Miller, Jaggers, Hendricks, and Orr discussed in the depositions of the Plaintiff and his parents reveal a response by the administrator regarding each incident of which they were aware.

The record reflects that Jennifer Miller served as the principal of OKHMS during Plaintiff's eighth grade year, the 2011-2012 school year. Plaintiff alleged that he was subjected to physical and verbal abuse on the bus during his middle school years. Plaintiff's mother testified that she had contact with Principal Miller during her son's eighth grade year in regards to the bullying of her son on the bus. (T.C. Dep. at 33.) She testified that after her report of the bullying, a meeting occurred and Plaintiff's bus was changed. (Id.) Additionally, Plaintiff's mother testified that she also informed Principal Miller that Plaintiff was almost physically assaulted in the bathroom of the middle school but a peer intervened to prevent the assault. (Id. at 34.) Plaintiff's family was not aware of the response by Principal Miller. Plaintiff tendered no evidence that the matter was not addressed or that he suffered any other harassment by the same three boys. (Id. at 34-36.)

With respect to Tessa Jaggers, Assistant Principal at NCHS, the record reflects that she was made aware of issues between Plaintiff and other students on the bus. The issues included some reports of bullying of Plaintiff by his peers, as well as allegations of Plaintiff's bullying of

8

younger students. (Id. at 18.) An ARC meeting was conducted and it was determined that Plaintiff would transition to a special needs bus to prevent any physical and verbal abuse. (Id.) During the ARC meeting, Plaintiff's parents agreed that it would be beneficial for Plaintiff to ride a smaller bus with fewer children that had a monitor. After Plaintiff's transition to the special needs bus, Plaintiff encountered no further bullying on the bus. (Id. at 28-30.)

With respect to Superintendent Orr and Principal Hendricks, the record reflects that the family met with them regarding Plaintiff being beat up in the parking lot of the school in the fall of Plaintiff's senior year. (T.C. Dep. at 24.) Plaintiff's mother testified that she did not recall having any other meetings with Principal Hendricks either in person or on the phone regarding any alleged peer bullying of Plaintiff. (T.C. Dep. at 46.) Plaintiff's father indicated that he had spoken with Principal Hendricks regarding his son's glasses being broken by a student while the student and his son were throwing a ball at school. (C.C. Dep. at 21.) Plaintiff's father also testified that that he had contacted Superintendent Orr over the phone about the bullying of Plaintiff, about the bus situation, about Plaintiff getting suspended, and Superintendent Orr's overturning of the suspension. (C.C. Dep. at 17, 51-52.)

Plaintiff failed to offer evidence of a lack of response by Superintendent Orr or Principal Hendricks. In addition to the transfer of Plaintiff to the special needs bus by the administration and Superintendent Orr's reversal of Plaintiff's suspension, the record reflects that in an effort to address the Plaintiff's reports of verbal and physical harassment and bullying, NCHS administration approved the utilization of a school resource officer to assist Plaintiff in some of his classes and walking him back and forth between classes. The ARC meeting notes reflect that the committee felt that it would benefit Plaintiff to have an adult with him during transition time

between classes and when he was going to lunch. (T.C. Dep. at 58.) Plaintiff's mother testified that the utilization of the resource officer was a good idea. (Id. at 59.)

Plaintiff cites other instances of bullying at NCHS which were reported to other school officials who are not defendants in the present action. For instance, Plaintiff's parents indicated that Plaintiff was "jumped in the cafeteria for protecting a special needs girl" during his freshman year. (T.C. Dep. at 37.) Plaintiff's mother testified that they met with Vice Principal Webb and the former NCHS principal Eric Gilpin about the incident and that they were informed by the administrators that "they would handle the situation." (Id. at 38.) Plaintiff's mother testified that there was not a recurring incident between the student and Plaintiff during the remaining part of his freshman year. Additionally, Plaintiff testified that he was struck on the back of his legs with a cable by a peer while walking outside the vocational school. Plaintiff's mother testified that she believed they discussed the matter with Mr. Webb and that no recurrence of that type of incident occurred. Plaintiff's mother further testified that after each conversation with Mr. Webb there was no recurrence of the same type of conduct. (T.C. Dep. at 61-62; 45).

Here, contrary to Plaintiff's assertion, the record demonstrates that school officials responded to the complaints by either investigating the incidents, disciplining the students, taking other proactive measures such as moving Plaintiff to smaller classes, placing a camera on the bus, transitioning Plaintiff to a special needs bus, or assigning a school resource officer to assist Plaintiff during the day. The Defendants' responses to the specific instances identified by Plaintiff cannot be characterized as "clearly unreasonable." Port Huron, 455 Fed. Appx. at 619. Despite their efforts, the Court is aware that Plaintiff continued to have problems with other students at the school. However, given the response, a reasonable jury could not find these

actions exhibited deliberate indifference to Plaintiff's claims of harassment. Thus, Plaintiff cannot establish an equal protection violation based on a deliberate indifference theory.

Because Plaintiff cannot prevail on his equal protection claim under either a disparate treatment or a deliberate indifference theory, the court grants summary judgment to Defendants Miller, Jaggers, Hendricks, and Orr on this claim.

### C. § 1983 Substantive Due Process Claim

In response to the motion for summary judgment, Plaintiff argues that his § 1983 claims are allowed by the Fourteenth Amendment to the United States Constitution and should be analyzed under the "state created danger" theory. The Due Process Clause provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The purpose of the Due Process Clause is "to protect the people from the State, not to ensure that the State protect[s] them from each other." DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 196 (1989). For this reason,

> the Supreme Court held in DeShaney that the Due Process Clause does not create an affirmative right to governmental aid. Id. As a general rule, the State has no obligation to protect the life, liberty, o[r] property of its citizens against invasion by private actors. Id. at 195. Two exceptions to this rule exist: 1) where the State enters into a "special relationship" with an individual by taking that person into its custody, and 2) where the State creates or increases the risk of harm to an individual. Id. at 199–201.

Stiles ex rel. D.S. v. Grainger County, Tenn., 2016 WL 1169099, *13 (6th Cir. Mar. 25, 2016).

**1. Special Relationship**

Plaintiff contends that Defendants established a special relationship with Plaintiff by acting with deliberate indifference to the Nelson County Public School's anti-bullying policy. "A special relationship, however, 'arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has

11

imposed on his freedom to act on his own behalf.'" Stiles, 2016 WL 1169099, *14 (quoting DeShaney, 489 U.S. at 200). Here, the actions that Plaintiff cite to demonstrate a special relationship "amount at most to knowledge of [Plaintiff's] situation and unfulfilled promises to remedy it, neither of which creates a special relationship." Stiles, 2016 WL 1169099, *14. Defendants did not restrain Plaintiff's or his parents' freedom to act on his behalf. "Moreover, . . . . the Sixth Circuit has consistently rejected the existence of a special relationship between school officials and students based on compulsory attendance laws or the school's knowledge of a student's vulnerability." Id. (citing Soper, 195 F.3d at 853 (finding no special relationship between school officials and plaintiff who was sexually assaulted by three students on school grounds); Doe v. Claiborne County, Tenn., 103 F.3d 495, 510 (6th Cir. 1996) (holding that "a state's compulsory attendance laws do not sufficiently 'restrain' students to raise a school's common law obligation [to maintain a safe school environment] to the rank of a *constitutional duty*"); Sargi v. Kent City Bd. of Educ., 70 F.3d 907, 910–11 (6th Cir. 1995) (finding no special relationship between a student and school district officials requiring the school to care for the student while she rode the school bus, even though school district knew of student's medical condition). Thus, Plaintiff cannot show a special relationship between himself and Defendants.

**2. State–Created Danger**

Plaintiff also argues that Defendants created an increased risk that Plaintiff would be exposed to violence from other students by failing to inform law enforcement of the assaults pursuant to KRS § 158.156, failing to contact the parents regarding the assaults, failing to enforce the law, failing to enforce school policy, failing to take steps to protect him, failing to adhere to the 2009 Settlement Agreement, failing to discipline the students, and not disciplining students severely enough. "To prevail on a state-created danger theory, Plaintiffs must establish

12

three elements: (1) an affirmative act that creates or increases the risk to the plaintiff, (2) a special danger to the plaintiff as distinguished from the public at large, and (3) the requisite degree of state culpability." Stiles, 2016 WL 1169099, *14 (citing McQueen v. Beecher Community Schs., 433 F.3d 460, 464 (6th Cir. 2006)). "The ultimate question in determining whether an affirmative state action increased danger to an individual is whether the individual was safer before the state action than after it." Stiles, 2016 WL 1169099, *14 (citing Jasinski v. Tyler, 729 F.3d 531, 539 (6th Cir. 2013)).

None of the acts identified by Plaintiff qualifies as an affirmative act that created or increased Plaintiff's risk of danger. "Failing to punish or insufficiently punishing assailants is generally not an affirmative act, and, even where it is, it typically does not create or increase the plaintiff's risk of harm." Stiles, 2016 WL 1169099, *15 (citing Morrow v. Balaski, 719 F.3d 160, 178 (3d Cir. 2013) (en banc) (holding that suspending a bully did not increase the plaintiffs' vulnerability to harm and that failing to expel the bully was not an affirmative act); Pahssen v. Merrill Community Sch. Dist., 668 F.3d 356, 367 (6th Cir. 2012) (ruling that instructing a rebellious student to stop sexually harassing the plaintiff did not result in a state-created danger); S.S. v. Eastern Kentucky University, 532 F.3d 445, 456 (6th Cir. 2008)(upholding district court's decision that failure to protect the plaintiff from peer harassment was not an affirmative act that increased the plaintiff's risk of harm); Nabozny v. Podlesny, 92 F.3d 446, 460 (7th Cir. 1996) (holding that failing to punish assailants did not create or enhance the plaintiff's risk of harm)). Similarly, as noted recently by the Sixth Circuit,

> Ignoring a dangerous situation is usually not an affirmative act and, furthermore, usually cannot increase a preexisting danger. See McQueen, 433 F.3d at 465–66 (finding that a teacher's act of leaving students unsupervised in a classroom did not create or increase the risk that one student would shoot another); Jones v. Reynolds, 438 F.3d 685, 691 (6th Cir. 2006) (holding that police

13

> officers' failure to stop a drag race was not an affirmative act and did not create the risk of harm to a bystander); <u>Sargi</u>, 70 F.3d at 912–13 (holding that failing to communicate the plaintiff's health condition and establish emergency response plans were not affirmative acts). Even affirmatively returning a victim to a preexisting situation of danger does not create or increase the victim's risk of harm. See <u>Bukowski v. City of Akron</u>, 326 F.3d 702, 709 (6th Cir. 2003) (holding that police officers' act of returning a victim to the house where they originally found her did not increase the plaintiff's danger of being raped by the occupant of that house a second time).

<u>Stiles</u>, 2016 WL 1169099, *15.

      The actions alleged by Plaintiff are not affirmative acts. Failing to punish students sufficiently, failing to notify law enforcement, and failing to notify Plaintiff's parents are plainly omissions rather than affirmative acts. Further, Plaintiff offers no explanation how the 2009 Settlement Agreement increased Plaintiff's exposure to peer harassment in any way. In fact, no evidence exists that the Individual Defendants were involved with his educational services at the elementary school level during the period in question. At most, these acts returned Plaintiff to a preexisting situation of danger. <u>Id</u>. Nothing suggests Plaintiff "was safer before" the Settlement Agreement or the response by the school officials than he was afterwards. <u>Id</u>. (citing <u>Jasinski</u>, 729 F.3d at 539 (emphasis omitted) (quoting <u>Cartwright v. City of Marine City</u>, 336 F.3d 487, 493 (6th Cir. 2003)).

      Additionally, for the reasons set out more fully above, this is not a situation where the Defendants made repeated decisions not to enforce the district's policy against bullying as it applied to Plaintiff which "gave students license to act with impunity." <u>Shively</u>, 579 Fed. Appx. at 356 (school administrators did nothing to stop the harassment or punish the perpetrators enabling "a pattern of physical abuse to persist"). In the present case, the record demonstrates

that the school administration did undertake measures to investigate and respond to the allegations of physical and verbal abuse.

Finally, the alleged failure of school officials to report to law enforcement the commission of a felony offense by a student against Plaintiff pursuant to KRS § 158.156 does not satisfy the state-created danger requirement in the present case. For example, Plaintiff argues that when he was struck with a cable, felonious assault occurred requiring the reporting requirement under KRS § 158.156. A failure to report this incident to law enforcement did not create or enhance the Plaintiff's risk of harm. Even assuming that the conduct complained of by Plaintiff qualifies as a felony offense, the Plaintiff does not claim that he was ever victimized a second time by the same student. Thus, any failure to have reported a felony threat or felony assault did not create the opportunity for subsequent assault by the same student.

As a result, Plaintiff's substantive due process claim cannot prevail under a state-created danger theory. Summary judgment in favor of the Individual Defendants is granted.

### D.  Municipal Liability

Plaintiff also brings a municipal liability claim under § 1983 against the Nelson County School District. The Nelson County School District is not an entity subject to suit. See Nelson County Board of Education v. Forte, 337 S.W.3d 617, 625 (Ky. 2011). Instead, the proper entity is the Nelson County Board of Education who has been made a real party in interest by Plaintiff's suit against the Individual Defendants in their official capacities. Kentucky v. Graham, 473 U.S. 159 (1985).

It is undisputed that the Board of Education had written policies in place that were designed to prohibit and address bullying, harassment, and discrimination by peers. Plaintiff offers no argument or evidence that the Nelson County Board of Education had a custom of

15

failing to investigate and punish students for bullying and harassment or was the moving force behind the alleged violation of Plaintiff's constitutional rights. Furthermore, "a municipality can be liable under § 1983 only if there is some underlying constitutional violation for which it could be held responsible." Stiles, 2016 WL 1169099, *16. As explained above, Plaintiff presented no genuine issue of material fact supporting a violation of Plaintiff's constitutional rights by any school official. "The lack of any constitutional deprivation precludes a finding of municipal liability against the Board." Id.

### E. Rehabilitation Act Claim

With respect to Plaintiff's § 504 Rehabilitation Act Claim against the Nelson County Board of Education, the Plaintiff must show that "(1) The plaintiff is a 'handicapped person' under the Act; (2) The plaintiff is 'otherwise qualified' for participation in the program; (3) The plaintiff is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance." G.C. v. Owensboro Public Schools, 711 F.3d 623, 635 (6th Cir. 2013) (citing Campbell v. Board of Educ. of Centerline Sch. Dist., 58 Fed. Appx. 162, 165 (6th Cir. 2003)). In the present case, the Rehabilitation Act claims are premised on Defendants' permitting students to engage in improper conduct against Plaintiff and failing to remedy the bullying and harassment. There is no evidence that such actions, even if true, were based in any way on Plaintiff's handicap or disability. See, e.g., Griffin v. Sanders, 2013 WL 3788826, *8 (E.D. Mich. July 19, 2013). Without such evidence, Plaintiff cannot satisfy the requirement that the discrimination was solely by reason of his handicap. Id.

### F. Remaining State Law Claims

Having dismissed the Plaintiff's federal claims, the Court declines to exercise pendent jurisdiction over Plaintiff's state law claims. See United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." Id. at 726.). Therefore, Plaintiff's pendent state law claims are remanded to the Nelson Circuit Court.

### G.  Motion for Leave to File Amended Complaint

Plaintiff moves for leave to file a second amended complaint pursuant to Fed. R. Civ. P. 15(a)(2) to include harassment and bullying inflicted upon the Plaintiff continuing into the 2015-2016 school year.  Specifically, Plaintiff claims that he "has been assaulted on at least two (2) occasions" and "has been verbally harassed on a weekly basis." (Second Amended Complaint at ¶¶ 22-23.)

Fed. R. Civ. P. 15(a)(2) states that after a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave." A district court should freely grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, a district court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

The Court notes that because Plaintiff seeks leave to amend his complaint after the deadline imposed by the Court's Scheduling Order [DN 18], Plaintiff must first show good cause for modifying the Scheduling Order before the Court will consider whether such amendment is

proper under Fed. R. Civ. P. 15(a)(2). Fed. R. Civ. P. 16(b)(4); see also Leary v. Daeschner, 349 F.3d 888, 909 (6th Cir. 2003) ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a).").

In the present case, Plaintiff was assaulted by another student in the parking lot at school in early October of 2015. The depositions of Plaintiff and his father were taken on October 22, 2015, and the deposition of his mother was taken on December 8, 2015. The expert discovery deadline closed on December 18, 2015. The dispositive motion deadline was January 15, 2016. Despite these events and deadlines, Plaintiff waited until April 12, 2016, to move for leave to file Plaintiff's second amended complaint to assert claims for continued harassment and bullying. Plaintiff fails to offer any explanation why he delayed seven months after another physical altercation at school to seek to add additional claims to include harassment his junior and senior year of high school. Plaintiff also fails to explain why he sought to amend his complaint after the close of discovery, after the dispositive motion deadline passed, and after the parties had concluded the briefing of the current motion for summary judgment. For these reasons, the Court finds that Plaintiff has failed to demonstrate that good cause exists to excuse his failure to bring the motion for leave to amend the complaint prior to the end of discovery. Accordingly, the motion for leave to file a second amended complaint is denied.

To the extent that Plaintiff seeks to amend the case caption to substitute his initials with his full name because he has reached the age of majority, the Court grants the relief.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendants, Nelson County School District, Board of Education of Nelson County, Anthony Orr,

Shelly Hendricks, Jennifer Miller, and Tessa Jaggers, for summary judgment [DN 32] is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion by Plaintiff, M.P.T.C., for leave to file Plaintiff's second amended complaint [DN 37] is **DENIED.**  The motion to amend the case caption to substitute the Plaintiff's initials with his full name is **GRANTED**.  The Clerk of Court is directed to amend the docket to reflect the substitution of "Michael Paul Thomas Curtis" as Plaintiff for "M.P.T.C. by his Next Friends his parents, C.C. and T.C."  A judgment will be entered consistent with this opinion.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record
    Nelson Circuit Court

June 13, 2016